UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES,

        -against-

KEITH RANIERE, et al.,

        Defendant.

**MEMORANDUM & ORDER**
**18-CR-204 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is a Motion for Recusal and Judicial Disqualification of this court, filed by Defendant Raniere on May 6, 2022. (Mot. for Recusal (Dkts. 1170-71).) Defendant Raniere seeks recusal pursuant to both 28 U.S.C. § 455(a) and 28 U.S.C. § 455(b)(1). For the reasons set forth below, this motion for recusal is DENIED.

## I. BACKGROUND

### A. Factual History

The court assumes familiarity with the underlying facts of the case, *United States v. Raniere*, et al., and summarizes briefly below only those facts relevant to the instant motion.

In May and June 2019, this court held a several week jury trial regarding the criminal charges brought against Defendant Keith Raniere. That trial included testimony from a plethora of witnesses. (*See generally* Dkts. 634, 636, 638, 654, 658, 660, 661, 662, 670, 672, 674, 676, 678, 680, 687, 695, 697, 699, 704, 706, 711, 713, 723.) One such witness, Lauren Salzman, played an important role at trial as a cooperating witness. (*See generally* Dkts. 670, 672.) An exchange between the court and an attorney for the defense that took place during the cross-examination of Ms. Salzman, on the 10th out of 23 days of testimony, is among the incidents in dispute on this motion. (Mem. In Support (the "Mot.") (Dkt. 1171) at 2-7); (May 22, 2019 Trial Tr. (Dkt. 958)

1

at 2265-70.) After the trial was completed, the court undertook typical post-trial duties such as presiding over restitution hearings and sentencing the various defendants who had pleaded guilty or been convicted at trial. Two such hearings are at issue in this motion. First, on July 20, 2021, a hearing was held for the purposes of determining the amount of restitution owed by Defendant Raniere. (Mot. at 7-16; Restitution Hearing Tr. (Dkt. 1193).) Second, on September 30, 2020, a hearing was held for the purposes of sentencing Defendant Clare Bronfman. (Mot. at 17-18; Bronfman Sent. Tr. (Dkt. 964).)

### B. Procedural History

Defendant Raniere filed the instant Recusal Motion on May 6, 2022. (Mot.) On May 9, 2022, the Court acknowledged receipt of the motion and stated that it would defer consideration of the motion until the Second Circuit resolved the appeal of the judgment of conviction, which was at the time *sub judice* after oral argument. (May 9, 2022 Text Order.) On January 3, 2023, two mandates issued from the Second Circuit, affirming the district court's judgments in full. (Dkts. 1183-84.)[1] Shortly thereafter, Defendant filed with the Second Circuit a petition for a writ of mandamus, seeking relief consistent with this Motion. (*See* Dkt. 1185.) On March 20, 2023, a mandate issued from the Second Circuit, denying that petition on the basis that "Petitioner has not demonstrated that he lacks an adequate, alternative means of obtaining relief, that his right to the writ is clear and indisputable, and that granting the writ is appropriate under the circumstances." (*Id.*) The court now considers the Motion.

---

[1] On April 17, 2023, the Supreme Court denied Defendant Raniere's petition for a writ of certiorari. *See* Order List, Supreme Court of the United States at 3 (Apr. 17, 2023), https://www.supremecourt.gov/orders/courtorders/041723zor_4gdj.pdf.

## II. LEGAL STANDARD

Defendant Raniere moves for recusal under both 28 U.S.C. § 455(a) and 28 U.S.C. § 455(b)(1). These two statutory provisions are governed by similar but distinct legal standards.

   1. 28 U.S.C. § 455(a)

In evaluating the appropriateness of recusal under § 455(a), courts consider the statutory requirement that a Judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).[2] This provision is to "be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994)[3]; *see also Amico*, 486 F.3d at 775 ("[T]his test deals exclusively with appearances. Its purpose is the protection of the public's confidence in the impartiality of the judiciary."). The operative question is whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (alterations in original); *ISC Holding*, 688 F.3d at 107; *see also In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988); *Amico*, 486 F.3d at 775.

---

[2] *See, e.g., ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2d Cir. 2012) ("Recusal here is governed by 28 U.S.C. § 455(a), which states that '[a]ny ... judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'") (alterations in original); *see also SEC v. Razmilovic*, 728 F.3d 71 (2d Cir. 2013), *as amended* 738 F.3d 14, 29 (2d Cir. 2013); *In re Int'l Bus. Machs. Corp.*, 45 F.3d 641, 643 (2d Cir. 1995); *United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007); *United States v. Giordano*, 442 F.3d 30, 48 (2d Cir. 2006); *United States v. Basciano*, No. 03-CR-929 (NGG), 2008 WL 794945, at *10 (E.D.N.Y. Mar. 24, 2008).

[3] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

3

The *Liteky* court explained that the goal of a recusal analysis is to identify not just whether the judge in question holds a "favorable or unfavorable disposition or opinion," but whether such views are "wrongful or inappropriate." *Liteky*, 510 U.S. at 550. Moreover, the level of bias necessary to warrant recusal under §455(a) is higher if it is derived from a judicial—rather than extrajudicial—source. *Liteky*, 510 U.S. at 555 (stating that § 455(a) analyses rely on a highly "significant (and often determinative) extrajudicial source factor")

Alleged bias may not warrant recusal where "upon completion of the evidence, [a Judge is] exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person" throughout the trial. *Liteky*, 510 U.S. at 550-51. This would likely not constitute recusable bias because the judge's "knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings." *Id.* To constitute a basis for recusal due to bias stemming from judicial sources, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current [or] prior proceedings" would have to demonstrate "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555; *see also ISC Holding*, 688 F.3d at 107; *Razmilovic*, 738 F.3d at 29; *Basciano*, 2008 WL 794945, at *10. Even "a judge's comments during a proceeding that are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Carlton*, 534 F.3d at 100 (citing *Liteky*, 510 U.S. at 555); *see also Razmilovic*, 738 F.3d at 29.

By contrast, the "requirement of deep-seated antagonism does not apply" where "opinions are . . . 'derive[d] from a source outside judicial proceedings.'" *ISC Holding*, 688 F.3d at 107 (quoting *Liteky*, 510 U.S. at 551, 554) (differentiating bias derived from judicial versus extrajudicial sources).

4

2. 28 U.S.C. § 455(b)(1)

§ 455(b)(1) requires a judge to recuse himself "where he has a personal bias or prejudice concerning a party[.]" 28 U.S.C. § 455(b)(1). *See, e.g., United States v. Osinowo*, No. 95-CR-1334, 1996 WL 20514, at *1 (2d Cir. 1996). Courts have emphasized that while motions brought under § 455(a) are evaluated pursuant to an objective standard, § 455(b)(1) "mandates recusal only where the court harbors *actual* prejudice or bias against a particular defendant." *Id.* (citing *Liteky*, 510 U.S. at 553) (emphasis added); *see also Pri-har v. United States*, 83 F. Supp. 2d 393, 397 (S.D.N.Y. 2000). As in a § 455(a) analysis, § 455(b)(1) typically requires an "extrajudicial" source factor. *Liteky*, 510 U.S. at 553 ("§ 455(b)(1)...contains the 'extrajudicial source' limitation[.]"); *see also Curley v. St. John's Univ.*, 7 F. Supp. 2d 359, 362 (S.D.N.Y. 1998); *Pri-har*, 83 F.Supp. at 397 (applying the logic of *Liteky* to § 455(b)(1) claims).

3. Recusal for the Purposes of Ruling on a Rule 33 Motion

Although much of the controlling case law cited was developed in the context of a party seeking a judge's recusal prior to the commencement of litigation or trial, the standards for recusal under § 455(a) and/or (b)(1) remain the same where the party moving for recusal has also moved (or is simultaneously moving) for a new trial under Fed. R. Crim. P. 33. *See United States v. Scaretta*, No. 97-CR-1089, 1997 WL 829256, at *4 (2d Cir. 1997); *Osinowo*, 1996 WL 20514, at *1; *United States v. Robinson*, No. 16-CR-545 (SJF) (AYS), 2021 WL 62076, at *25 (E.D.N.Y. Jan. 6, 2021); *Pri-har*, 83 F. Supp. at 394; *United States*

5

*v. Agunbiade*, No. 90-CR-610(S)-02 (JRB), 1995 WL 351058, at *1 (E.D.N.Y. May 10, 1995).[4]

### III. LEGAL ANALYSIS

The court will now assess the Defendant's various arguments for recusal in turn. None of the cited-to examples of supposed bias reach the standards set forth by 28 U.S.C. §§ 455(a) or 455(b)(1).

#### A. Trial conduct

First, the Defendant argues that "the Court's comments and personal opinions expressed about Mr. Raniere, his Defense team, and his co-defendants, displayed a deep-seated, unequivocal hostility and personal bias against Mr. Raniere and his Defense team, making disqualification for all future proceedings, in this case, warranted and, indeed, mandatory." (Mot. at 21.)

With regard to the allegedly biased conduct during Ms. Salzman's testimony at trial, the Defendant exhibits a foundational misunderstanding of what constitutes personal, extra-judicial bias, rather than honestly held viewpoints gained throughout presiding over a trial. Here, there is no indication whatsoever that this

---

[4] In addition to filing a motion for a new trial pursuant to Rule 33, Defendant Raniere took the unusual step of filing a petition for a writ of mandamus at the Court of Appeals prior to decision on the Rule 33 motion. While such a step is typically not taken until *after* the district court decides the underlying recusal motion, the court is aware of two other cases in which parties attempted to do so prior to a district court ruling on the recusal. *Qualls v. United States*, No. 07-CR-14 (DLI), 2018 WL 1513625, at *1 (E.D.N.Y. Mar. 27, 2018); *Buhannic v. TradingScreen Inc.*, No. 19-CIV-10650 (ER), 2020 WL 4058949, at *4 (S.D.N.Y. July 20, 2020). In both instances, the appellate court denied the petition for a writ of mandamus, and the district court proceeded to evaluate the recusal motions under the same legal standards it would have used had no writ of mandamus been sought. *Qualls*, 2018 WL 1513625, at *1; *Buhannic*, 2020 WL 4058949, at *4.

6

court harbored any animosity or "personal bias" toward Defendant Raniere prior to the trial, during which many unsavory facts about Mr. Raniere were proven beyond a reasonable doubt.

The Defendant also fails to recognize the wide discretion granted to judges in the administration of a trial. "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Liteky*, 510 U.S. at 556; *see also Farr v. Greiner*, No. 01-CV-6921 (NG), 2007 WL 1094160, at *15 (E.D.N.Y. Apr. 10, 2007) (quoting *Gilliam v. Foster*, 75 F.3d 881, 900 (4th Cir.1996)) ("Generally, a trial judge possesses wide latitude to maintain control over the courtroom to ensure the integrity of the proceedings."). In particular, "[t]rial judges retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Cordero v. Rivera*, 677 F. Supp. 2d 684, 699 (S.D.N.Y. 2009) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). Here, the court's choice to curtail cross-examination of a witness to avoid needless harassment and attend to the witness's wellbeing was well within the bounds of a trial judge's discretion. The court's behavior in furtherance of this legitimate goal, therefore, did not meet the extremely high standard for bias stemming from a judicial source—that of evincing "deep-seated . . . antagonism."[5] *Liteky*, 510 U.S. at 555. Thus, the court is not required to recuse itself under 455(b)(1)'s actual bias rule.

The standard under 455(a) is one of whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done

---

[5] Moreover, the comparison to a World War-I era case in which a federal judge exhibited blatant xenophobia is an analogy that is, at best, inapt.

7

absent recusal." *Carlton*, 534 F.3d at 100. Even if the court's comments at time evinced not just frustration and impatience, but some sort of distaste for the defendant, no reasonable observer would, after witnessing the trial over which the court was then presiding, earnestly believe that the distaste was the result of some sort of extrajudicial bias or deep-seated antagonism. This threshold has therefore also not been met.[6]

### B. Restitution Hearing Conduct

Second, the Defendant asserts that "Judge Garaufis displayed an unacceptable bias toward Mr. Raniere's Defense team by letting his frustration with the Defense's request for a delay" of the Restitution Hearing interfere with his duty to preside over the trial impartially. (Mot. at 24.) Here too, there is no evidence that the court harbored any bias with an extra-judicial source against Mr. Raniere. The restitution hearing in question happened *after* the trial took place. Moreover, any conduct evincing bias was allegedly aimed toward an attorney hired by Defendant Raniere after the conclusion of trial, and there is no evidence that any disagreement between the court and that counsel reflected a broader issue between the court and the defendant. Thus, the court exhibited no bias stemming from *either* an extrajudicial or judicial source toward the Defendant at this time, let alone the "deep seated ... antagonism" required to mandate recusal under 28 U.S.C. 455(a). *Liteky*, 510 U.S. at 555. Finally, the fact that the allegedly biased conduct was directed only toward one of a series of lawyers representing the defendant, and never toward the defendant himself, weighs strongly against any finding that the

---

[6] The Defendant also raises the question of whether less extreme measures would have been possible. It is altogether possible that less extreme measures were available. However, that is not the standard to which this court must be held in considering a recusal motion.

8

district court "harbors actual prejudice or bias against a defendant," *Osinowo*, 100 F.3d at 2. This incident therefore also does not require recusal under 28 U.S.C. 455(b)(1).

### C. Sentencing Hearing Conduct

Third and finally, the Defendant argues that this court's choice to "tripl[e] the sentence of Ms. Bronfman, a first-time offender, because she refused to 'renounce' Mr. Raniere and the NXIVM organization," presents further evidence of this court's bias toward Defendant Raniere. (Mot. at 26.)

In determining the appropriate sentence for Defendant Bronfman, the court considered the required sentencing factors. 18 U.S.C. § 3553(a). These factors include the need for a sentence that reflects the seriousness of the offense, the need for a sentence that promotes respect for the law, and the goal of providing a just punishment. (*See* Bronfman Sent. Tr. at ECF 121); *see also* 18 U.S.C. § 3553(a)(2)(A). The court made no findings as to whether Defendant Bronfman had any real time knowledge of the extent of Defendant Raniere's criminal behavior. As part of its analysis of the sentencing factors, however, the court did take into consideration Defendant Bronfman's continued support for Defendant Raniere *after* learning the full extent of his criminal conduct. (*See* Bronfman Sent. Tr. at ECF 123 ("It does, however, concern me that she continues to stand by Raniere and believe in his work, even as he stands convicted of heinous conduct."); *see also* Mandate of USCA as to 20-5320-cr (Dkt. 118) ("Summary Order") at ECF 38 ("a full reading of the District Court's lengthy statement (which covers thirty pages of the transcript) shows that it was primarily concerned with Bronfman's actions *after* she found out about DOS in June 2017, including gher reinvigorated support of Raniere").) In doing so, the court displayed fidelity to its obligation to carefully weigh the sentencing factors and other relevant information, and therefore displayed no bias—extra-judicial or otherwise.

9

The court carefully articulated the ways in which Defendant Bronfman's actions in devotion to Defendant Raniere without regard to the seriousness of his crimes had reflected a sincere lack of respect of the law. The court also endeavored to consider how the sentence compared to sentences of other similarly situated defendants. But, as the court took great pains to describe, the circumstances of Ms. Bronfman's offenses, and in particular the relationship between her and Mr. Raniere, provided important context when considering the seriousness of her offenses, and set her conduct far apart from other otherwise similarly situated defendants. (Bronfman Sent. Tr. at ECF 124 ("[T]he context of Ms. Bronfman's criminal conduct places her in [an] all together different category from other defendants convicted of the same offenses; and, therefore, her circumstances defy easy comparison.").) Indeed, the court made clear that "the offenses of conviction . . . were more serious here than those crimes might ordinarily be under other circumstances." (Bronfman Sent. Tr. at ECF 121.) The Second Circuit, affirming this court in full, agreed wholeheartedly with this assessment, pointing out that her "conduct—before and after her indictment—readily distinguishe[d] her" from her co-defendants, and reiterating this court's assertion that the context for her criminal conduct set her far apart from other defendants convicted of the same offenses. (Summary Order at ECF 38.) In sentencing Ms. Bronfman accordingly, the court appropriately exercised its wide discretion in matters of sentencing. (*See id.*) ("[T]he District Court acted well within its discretion in arriving at its conclusion.")

To have considered Ms. Bronfman's relationship with Mr. Raniere in the process of doing so does not indicate impermissible bias—either of the objective sort required for recusal under 455(a) or of the actual sort required for recusal under 455(b)(1). 28 U.S.C. § 455(a)-(b)(1). Indeed, "[t]he Second Circuit has repeatedly held that a sentencing court is entitled to rely on

information gleaned from a trial in which the person to be sentenced was neither a defendant nor represented by counsel." (Bronfman Sent. Tr. at ECF 100.) To the extent the court properly gleaned such information about that relationship from the lengthy trial and the surrounding proceedings, and weighed that evidence at sentencing, it was proper to do so.

## IV. CONCLUSION

For the foregoing reasons, Defendant Raniere's motion seeking for this court to recuse itself prior to consideration of Rule 33 motions in this action is DENIED.

SO ORDERED.

Dated:   Brooklyn, New York
         April 26, 2023

                                              s/Nicholas G. Garaufis
                                              _____
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge

11